MICHAEL FAILLACE & ASSOCIATES, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------X
MIGUEL ANGEL ROMANO PERALTA,
JAZIEL MARTINEZ TEHUITZIL, JOSUE
MARTINEZ ROMANO, SILVESTRE
CABRERA ROMANO, *individually and on*
*behalf of others similarly situated,*

                     *Plaintiffs*,

          -against-

P&H 49 CORP. (D/B/A BAGELS ON THE
SQUARE), HYUN PAK, and MARCOS
VELAZQUEZ,

                *Defendants.*
-----------------------------------------------------X

                                            **COMPLAINT**

                     **COLLECTIVE ACTION UNDER**
                        **29 U.S.C. § 216(b)**

                                    **ECF Case**

       Plaintiffs Miguel Angel Romano Peralta, Jaziel Martinez Tehuitzil, Josue Martinez

Romano, and Silvestre Cabrera Romano, (collectively, "Plaintiffs") individually and on behalf of

others similarly situated, by and through their attorneys, Michael Faillace & Associates, P.C., upon

their knowledge and belief, and as against P&H 49 Corp. (d/b/a Bagels on the Square), ("Defendant

Corporation"), Hyun Pak and Marcos Velazquez, ("Individual Defendants"), (collectively,

"Defendants"), allege as follows:

<u>**NATURE OF ACTION**</u>

      1.    Plaintiffs are former employees of Defendants P&H 49 Corp. (d/b/a Bagels on the

Square), Hyun Pak, and Marcos Velazquez.

2.      Defendants own, operate, or control a bagel restaurant/deli, located at 7 Carmine St, New York, NY 10014 under the name "Bagels on the Square".

3.      Upon information and belief, individual Defendants Hyun Pak and Marcos Velazquez, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant/deli as a joint or unified enterprise.

4.      Plaintiffs were employed as delivery workers, deli workers, and as a cashier at the deli located at 7 Carmine St, New York, N.Y. 10014.

5.      Plaintiffs Miguel Angel Romano Peralta, Josue Martinez Romano and Silvestre Cabrera Romano were all ostensibly employed as delivery workers. However, they were required to spend a considerable part of their work day performing non-tipped duties, including but not limited to preparing juices and fruit salads, bringing up sodas and other drinks, accommodating the sodas, cleaning the bathrooms, windows and refrigerators, cutting vegetables, sweeping and mopping, throwing out the garbage, twisting and tying up cardboard boxes, washing dishes and carrying down and stocking deliveries in the basement (hereafter the "non-tipped duties").

6.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage and overtime compensation for the hours that they worked.

7.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

8.      Defendants employed and accounted for Plaintiffs Miguel Angel Romano Peralta, Josue Martinez Romano and Silvestre Cabrera Romano as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

9.      Regardless, at all relevant times, Defendants paid Plaintiffs Miguel Angel Romano Peralta, Josue Martinez Romano and Silvestre Cabrera Romano at a rate that was lower than the required tip-credit rate.

10.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiff's Miguel Angel Romano Peralta, Josue Martinez Romano and Silvestre Cabrera Romano non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day. 12 N.Y. C.R.R. §146.

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiff's Miguel Angel Romano Peralta, Josue Martinez Romano and Silvestre Cabrera Romano actual duties in payroll records by designating them as delivery workers instead of as non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them at the tip-credit rate (which they still failed to do).

12.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

13.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the minimum wage and overtime compensation required by federal and state law and regulations.

14.    Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.    Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

17.    Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a bagel restaurant/deli located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

### *Plaintiff*

18.    Plaintiff Miguel Angel Romano Peralta ("Plaintiff Romano" or "Mr. Romano") is an adult individual residing in Kings County, New York.

19.    Plaintiff Romano was employed by Defendants at Bagels on the Square from approximately November 2015 until on or about April 5, 2019.

20. Plaintiff Jaziel Martinez Tehuitzil ("Plaintiff Tehuitzil" or "Mr. Tehuitzil") is an adult individual residing in Hudson County, New Jersey.

21. Plaintiff Tehuitzil was employed by Defendants at Bagels on the Square from approximately September 2011 until on or about July 26, 2019.

22. Plaintiff Josue Martinez Romano ("Plaintiff Martinez" or "Mr. Martinez") is an adult individual residing in Kings County, New York.

23. Plaintiff Martinez was employed by Defendants at Bagels on the Square from approximately June 2012 until on or about July 28, 2019.

24. Plaintiff Silvestre Cabrera Romano ("Plaintiff Cabrera" or "Mr. Cabrera") is an adult individual residing in Kings County, New York.

25. Plaintiff Cabrera was employed by Defendants at Bagels on the Square from approximately February 2013 until on or about July 30, 2019.


*Defendants*

26. At all relevant times, Defendants owned, operated, or controlled a bagel restaurant/deli, located at 7 Carmine St, New York, NY 10014 under the name "Bagels on the Square".

27. Upon information and belief, P&H 49 Corp. (d/b/a Bagels on the Square) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 7 Carmine St, New York, NY 10014.

28. Defendant Hyun Pak is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Hyun Pak is sued individually in

his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Hyun Pak possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.    Defendant Marcos Velazquez is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Marcos Velazquez is sued individually in his capacity as a manager of Defendant Corporation. Defendant Marcos Velazquez possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30.    Defendants operate a bagel restaurant/deli located in the West Village section of Manhattan.

31.    Individual Defendants, Hyun Pak and Marcos Velazquez, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

32.    Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33.    Each Defendant possessed substantial control over Plaintiff's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34.    Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiff's (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

35.    In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36.    Upon information and belief, Individual Defendant Hyun Pak operates Defendant Corporation as either an alter ego of himself and/or fails to operate Defendant Corporation as an entity legally separate and apart from himself, by among other things:

a)    failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)    defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)    transferring assets and debts freely as between all Defendants,

d)    operating Defendant Corporation for his own benefit as the sole or majority shareholder,

e)    operating Defendant Corporation for his own benefit and maintaining control over this corporation as a closed Corporation,

f)    intermingling assets and debts of his own with Defendant Corporation,

g) diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect his own interests, and

h) Other actions evincing a failure to adhere to the corporate form.

37.   At all relevant times, Defendants were Plaintiff's employers within the meaning of the FLSA and New York Labor Law.

38.   Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff's services.

39.   In each year from 2013 to 2019, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

40.   In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the deli on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

41.   Plaintiffs are former employees of Defendants who were employed as deli workers, cashiers, and ostensibly as delivery workers. However, the delivery workers spent over 20% of each shift performing the non-tipped duties described above.

42.   Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Miguel Angel Romano Peralta*

43.   Plaintiff Romano was employed by Defendants from approximately November 2015 until on or about April 5, 2019.

44.     Defendants ostensibly employed Plaintiff Romano as a delivery worker.

45.     However, Plaintiff Romano was also required to spend a significant portion of his work day performing the non-tipped duties described above.

46.     Although Plaintiff Romano ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

47.     Plaintiff Romano regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

48.     Plaintiff Romano's work duties required neither discretion nor independent judgment.

49.     From approximately November 2015 until on or about November 2017, Plaintiff Romano worked from approximately 9:00 a.m. until on or about 7:00 p.m., six days a week (typically 60 hours per week).

50.     From approximately January 2018 until on or about January 2019, Plaintiff Romano worked from approximately 7:00 a.m. until on or about 1:00 p.m., five days a week (typically 30 hours per week).

51.     From approximately January 2019 until on or about April 2019, Plaintiff Romano worked from approximately 9:00 a.m. until on or about 3:00 p.m., Saturdays and Sundays and from approximately 8:00 a.m. until on or about 1:00 p.m., Mondays, Tuesdays and Wednesdays (typically 27 hours per week).

52.     Throughout his employment, Defendants paid Plaintiff Romano his wages in cash.

53.     From approximately November 2015 until on or about November 2017, Defendants paid Plaintiff Romano a fixed salary of $260 per week.

54.     From approximately January 2018 until on or about January 2019, Defendants paid Plaintiff Romano $9.80 per hour.

55.     From approximately January 2019 until on or about April 2019, Defendants paid Plaintiff Romano $11.00 per hour.

56.     Defendants never granted Plaintiff Romano any breaks or meal periods of any kind.

57.     Plaintiff Romano was never notified by Defendants that his tips were being included as an offset for wages.

58.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Romano's wages.

59.     On a number of occasions, Defendants required Plaintiff Romano to sign a document, the contents of which he was not allowed to review in detail.

60.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Romano regarding overtime and wages under the FLSA and NYLL.

61.     Defendants did not provide Plaintiff Romano an accurate statement of wages, as required by NYLL 195(3).

62.     Defendants did not give any notice to Plaintiff Romano, in English and in Spanish (Plaintiff Romano's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

63.     Defendants required Plaintiff Romano to purchase "tools of the trade" with his own funds—including two bicycles.

*Plaintiff Jaziel Martinez Tehuitzil*

64.     Plaintiff Tehuitzil was employed by Defendants from approximately September 2011 until on or about July 26, 2019.

65.    Defendants ostensibly employed Plaintiff Tehuitzil as a deli worker and occasional cashier.

66.    Plaintiff Tehuitzil regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

67.    Plaintiff Tehuitzil's work duties required neither discretion nor independent judgment.

68.    From approximately October 2013 until on or about December 2016, Plaintiff Tehuitzil worked from approximately 7:00 a.m. until on or about 5:00 p.m., six days a week (typically 60 hours per week).

69.    From approximately February 2017 until on or about December 2018, Plaintiff Tehuitzil worked from approximately 6:00 a.m. until on or about 4:00 p.m., six days a week (typically 60 hours per week).

70.    From approximately January 2019 until on or about July 26, 2019, Plaintiff Tehuitzil worked from approximately 6:00 a.m. until on or about 1:00 p.m., Mondays, Tuesdays Thursdays and Fridays, four days a week, and from 7am to 2pm on Saturdays and Sundays (typically 42 hours per week).

71.    Throughout his employment, Defendants paid Plaintiff Tehuitzil his wages in cash.

72.    From approximately October 2013 until on or about December 2014, Defendants paid Plaintiff Tehuitzil $9.00 per hour.

73.    From approximately January 2015 until on or about December 2015, Defendants paid Plaintiff Tehuitzil $10.50 per hour.

74.    From approximately January 2016 until on or about December 2016, Defendants paid Plaintiff Tehuitzil $11.00 per hour.

75.    From approximately February 2017 until on or about December 2017, Defendants paid Plaintiff Tehuitzil $11.00 per hour.

76.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Tehuitzil $13.00 per hour.

77.    From approximately January 2019 until on or about July 2019, Defendants paid Plaintiff Tehuitzil $15.00 per hour and $20.00 for his overtime hours.

78.    Defendants never granted Plaintiff Tehuitzil any breaks or meal periods of any kind.

79.    Prior to early 2014, Plaintiff Tehuitzil was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as a time clock or punch cards, that accurately reflected his actual hours worked.

80.    On a number of occasions, Defendants required Plaintiff Tehuitzil to sign a document, the contents of which he was not allowed to review in detail.

81.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff Tehuitzil regarding overtime and wages under the FLSA and NYLL.

82.    Defendants did not provide Plaintiff Tehuitzil an accurate statement of wages, as required by NYLL 195(3).

83.    Defendants did not give any notice to Plaintiff Tehuitzil, in English and in Spanish (Plaintiff Tehuitzil's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Josue Martinez Romano*

84.    Plaintiff Martinez was employed by Defendants from approximately June 2012 until on or about July 28, 2019.

85.    Defendants ostensibly employed Plaintiff Martinez as a delivery worker.

86.   However, Plaintiff Martinez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

87.   Although Plaintiff Martinez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

88.   Plaintiff Martinez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

89.   Plaintiff Martinez's work duties required neither discretion nor independent judgment.

90.   From approximately October 2013 until on or about December 2016, Plaintiff Martinez worked from approximately 7:00 a.m. until on or about 5:00 p.m., six days a week (typically 60 hours per week).

91.   From approximately January 2017 until on or about December 2017, Plaintiff Martinez worked from approximately 7:00 a.m. until on or about 4:00 p.m., six days a week (typically 54 hours per week).

92.   From approximately January 2018 until on or about August 2018, Plaintiff Martinez worked from approximately 7:00 a.m. until on or about 3:00 p.m. five days a week (typically 40 hours per week).

93.   From approximately September 2018 until on or about July 2019, Plaintiff Martinez worked from approximately 8:00 a.m. until on or about 1:00 p.m., 3 days a week and from approximately 8:00 a.m. to 2:00 p.m. two days a week (typically 27 hours per week).

94.   Throughout his employment, Defendants paid Plaintiff Martinez his wages in cash.

95.   From approximately October 2013 until on or about December 2016, Defendants paid Plaintiff Martinez $4.00 per hour for all of his hours.

96.    From approximately January 2017 until on or about December 2017, Defendants paid Plaintiff Martinez $5.00 per hour and $7.00 for his overtime hours.

97.    From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Martinez $9.80 per hour.

98.    From approximately January 2019 until on or about July 2019, Defendants paid Plaintiff Martinez $11.20 per hour.

99.    Defendants never granted Plaintiff Martinez any breaks or meal periods of any kind.

100.   Plaintiff Martinez was never notified by Defendants that his tips were being included as an offset for wages.

101.   Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Martinez's wages.

102.   Prior to early 2014, Plaintiff Martinez was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as a time clock or punch cards, that accurately reflected his actual hours worked.

103.   On a number of occasions, Defendants required Plaintiff Martinez to sign a document, the contents of which he was not allowed to review in detail.

104.   No notification, either in the form of posted notices or other means, was ever given to Plaintiff Martinez regarding overtime and wages under the FLSA and NYLL.

105.   Defendants did not provide Plaintiff Martinez an accurate statement of wages, as required by NYLL 195(3).

106.   Defendants did not give any notice to Plaintiff Martinez, in English and in Spanish (Plaintiff Martinez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

107.    Defendants required Plaintiff Martinez to purchase "tools of the trade" with his own funds—including three bicycles, brakes, a camera, a helmet, monthly bicycle maintenance and 2 pairs of rain boots.

*Plaintiff Silvestre Cabrera Romano*

108.    Plaintiff Cabrera was employed by Defendants from approximately Mid-February 2013 until on or about July 30, 2019.

109.    Defendants ostensibly employed Plaintiff Cabrera as a delivery worker.

110.    However, Plaintiff Cabrera was also required to spend a significant portion of his work day performing the non-tipped duties described above.

111.    Although Plaintiff Cabrera ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

112.    Plaintiff Cabrera regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

113.    Plaintiff Cabrera's work duties required neither discretion nor independent judgment.

114.    From approximately October 2013 until on or about December 2015, Plaintiff Cabrera worked from approximately 8:00 a.m. until on or about 6:00 p.m., Fridays through Wednesdays; six days a week (typically 60 hours per week).

115.    From approximately January 2016 until on or about June 2016, Plaintiff Cabrera worked from approximately 6:00 a.m. until on or about 3:00 p.m., Fridays through Wednesdays six days a week (typically 54 hours per week).

116.    From approximately July 2016 until on or about December 2017, Plaintiff Cabrera worked from approximately 6:00 a.m. until on or about 3:00 p.m., Fridays through Tuesdays 5 days a week (typically 45 hours per week).

117.  From approximately January 2018 until on or about March 2018, Plaintiff Cabrera worked from approximately 6:00 a.m. until on or about 2:00 p.m., Fridays through Tuesdays 5 days a week (typically 40 hours per week).

118.  From approximately April 2018 until on or about December 2018, Plaintiff Cabrera worked from approximately 6:00 a.m. until on or about 1:00 p.m., Fridays through Tuesdays 5 days a week (typically 35 hours per week).

119.  From approximately January 2019 until on or about July 30 2019, Plaintiff Cabrera worked from approximately 6:00 a.m. until on or about 12:00 p.m., Fridays through Tuesdays 5 days a week (typically 30 hours per week).

120.  Throughout his employment, Defendants paid Plaintiff Cabrera his wages in cash.

121.  From approximately October 2013 until on or about June 2016, Defendants paid Plaintiff Cabrera $4.00 per hour.

122.  From approximately July 2016 until on or about December 2017, Defendants paid Plaintiff Cabrera $5.00 per hour for his first 40 hours and $7.00 per hour for overtime hours.

123.  From approximately January 2018 until on or about December 2018, Defendants paid Plaintiff Cabrera $9.80 per hour.

124.  From approximately January 2019 until on or about July 30 2019, Defendants paid Plaintiff Cabrera $11.20 per hour.

125.  Defendants never granted Plaintiff Cabrera any breaks or meal periods of any kind.

126.  Plaintiff Cabrera was never notified by Defendants that his tips were being included as an offset for wages.

127.  Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Cabrera's wages.

128.  Prior to early 2014, Plaintiff Cabrera was not required to keep track of his time, nor to his knowledge did the Defendants utilize any time tracking device, such as a time clock or punch cards, that accurately reflected his actual hours worked.

129.  On a number of occasions, Defendants required Plaintiff Cabrera to sign a document, the contents of which he was not allowed to review in detail.

130.  No notification, either in the form of posted notices or other means, was ever given to Plaintiff Cabrera regarding overtime and wages under the FLSA and NYLL.

131.  Defendants did not provide Plaintiff Cabrera an accurate statement of wages, as required by NYLL 195(3).

132.  Defendants did not give any notice to Plaintiff Cabrera, in English and in Spanish (Plaintiff Cabrera's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

133.  Defendants required Plaintiff Cabrera to purchase "tools of the trade" with his own funds—including three bicycles, one electric bicycle, one helmet, and Bicycle maintenance.

*Defendants' General Employment Practices*

134.  At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage and overtime compensation as required by federal and state laws.

135.  Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

136. Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulted in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

137. Defendants required Plaintiffs Romano, Martinez and Cabrera and all other delivery workers to perform general non-tipped tasks in addition to their primary duties as delivery workers.

138. Plaintiffs Romano, Martinez and Cabrera and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing the non-tipped duties outlined above.

139. These Plaintiffs' duties were not incidental to their occupation as tipped workers, but instead constituted entirely unrelated general deli work with duties, including the non-tipped duties described above.

140. These Plaintiffs and all other tipped workers were paid at a rate that was lower than the required lower tip-credit rate by Defendants.

141. However, under state law, Defendants were not entitled to a tip credit because the tipped worker's and these Plaintiff's non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

142. New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he or she has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

143. In violation of federal and state law as codified above, Defendants classified these Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was lower

than the required lower tip-credit rate when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

144.   Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiff's earned wages for tip income, as required by the NYLL before any deduction may be taken.

145.   Defendants failed to inform Plaintiffs who received tips, that their tips were being credited towards the payment of the minimum wage.

146.   Defendants failed to maintain a record of tips earned by Plaintiffs who worked as delivery workers for the tips they received.

Prior to early 2014, Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

147.   On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail.

148.   Defendants paid Plaintiffs their wages in cash.

149.   Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

150.   Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

151.    Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

152.    Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

153.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

154.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## **FLSA COLLECTIVE ACTION CLAIMS**

155.    Plaintiffs bring their FLSA minimum wage, overtime compensation, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

156.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required minimum wage, overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek, and willfully failing to keep records, as required under the FLSA.

157.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

### VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA

158.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

159.    At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

160.    Defendants had the power to hire and fire Plaintiffs (and the FLSA Class Members), controlled the terms and conditions of their employment, and determined the rate and method of any compensation in exchange for their employment.

161.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

162.   Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

163.   Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

164.   Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

165.   Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

166.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

167.   Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

168.   Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

169.   Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

### VIOLATION OF THE NEW YORK MINIMUM WAGE ACT

170.   Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

171.   At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

172.     Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of his employment, and determined the rates and methods of any compensation in exchange for his employment.

173.     Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

174.     Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

175.     Plaintiffs were damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE OVERTIME PROVISIONS

### OF THE NEW YORK STATE LABOR LAW

176.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

177.     Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

178.     Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

179.     Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

### VIOLATION OF THE NOTICE AND RECORDKEEPING

### REQUIREMENTS OF THE NEW YORK LABOR LAW

180.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

181.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiff's primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

182.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF THE WAGE STATEMENT PROVISIONS**

**OF THE NEW YORK LABOR LAW**

183.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

184.    With each payment of wages, Defendants failed to provide Plaintiffs with accurate statements listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

185.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

186.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

187.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

188.    Plaintiffs were damaged in an amount to be determined at trial.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)    Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(d)    Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(f)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid minimum wage, overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum wage and overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(k)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(l)     Awarding Plaintiffs damages for the amount of unpaid minimum wage and overtime compensation, and for any improper deductions or credits taken against wages as applicable

(m)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)    Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)    Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(p)    Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(q)    Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
       October 24, 2019

MICHAEL FAILLACE & ASSOCIATES, P.C.

By:    _____/s/ Michael Faillace_____
       Michael Faillace [MF-8436]
       60 East 42nd Street, Suite 4510
       New York, New York 10165
       Telephone: (212) 317-1200
       Facsimile: (212) 317-1620
       *Attorneys for Plaintiffs*

# MICHAEL FAILLACE & ASSOCIATES, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

April 8, 2019

BY HAND

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff. **(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:              Miguel Angel Romano Peralta
Legal Representative / Abogado:  Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                8 de abril de 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 2, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jaziel Martinez Tehuitzil

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                      2 de agosto 2019

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.
### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510                                  Telephone: (212) 317-1200
New York, New York 10165                                 Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

August 2, 2019

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:            <u>Josue Martinez Romano</u>

Legal Representative / Abogado:    <u>Michael Faillace & Associates, P.C.</u>

Signature / Firma:              _____

Date / Fecha:                 <u>2 de agosto 2019</u>

*Certified as a minority-owned business in the State of New York*

# Michael Faillace & Associates, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

Faillace@employmentcompliance.com

BY HAND

August 2, 2019

TO:     Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Silvestre Cabrera Romano

Legal Representative / Abogado:    Michael Faillace & Associates, P.C.

Signature / Firma:

Date / Fecha:                     2 de agosto 2019

_Certified as a minority-owned business in the State of New York_